*Kline and Funck*, *for defendant*.

---

*Court of Common Pleas, Lebanon County, January 10th, 1860.*

REINOEHL & MEILY *v.* ARENTZ.

When materialmen charged the articles furnished against both the contractor and the house, they can file a mechanic's lien against the latter. It is a question of fact for the jury whether the materials were furnished upon the credit of the building or the contractor. No presumption can be drawn from the fact that the lien was only filed fourteen days before the six months within which it must be filed had expired.

BY THE COURT.—The evidence shows that George I. Arentz made a contract with Henry Rise, to build him a house in this town, Rise to find all the materials. The plan and price were agreed on, and the work commenced some time in the summer of 1857. The plan was afterwards changed and another story added to the building; we have no evidence that a contract was made in relation to the change, consequently Arentz would be obliged to pay what the alteration was reasonably worth.

The plaintiffs in this suit were lumber merchants, and found the most of the materials in their line. The first question presented for your consideration is, were those materials furnished on the credit of the building, or on that of Henry Rise, the contractor?

There is evidence that about the time the contract was made with Rise, he and Arentz went through the plaintiffs' lumber yard, and examined the materials, but the defendant said nothing about purchasing.

A contract between the owner and materialmen need not be shown, it is sufficient that it appears the materials were furnished

[Reinoehl & Meily *v.* Arentz.]

*on the credit of the building*, though ordered and bargained for by the contractor.

Where the bargain for materials is made with the contractor alone, and the charge made to him, without any mention of the building, the legal presumption is that they were furnishd on his credit, but that may be repelled by proof that a bargain was made with the owner, that they were furnished on his credit, or other evidence to satisfy a jury that the materialmen intended to look to the building, and not to the contractor only. The entry on the book in that form would be *prima facie* against the contractor only, and not against the building. When the charge of the materials is made against a particular house—describing it—the legal presumption would be that the materialmen intended to look to the house alone, and not to the contractor. But that, like the former instance, might admit of explanation, and it could be shown that the sale was to the contractor, and he looked to for payment.

In the present case, the charge is to " Henry Rise for Arentz's house," which is *prima facie* against both the house and the contractor, and under such a charge, without further proof, a lien may be entered against the building. The lien filed in this case is, therefore, good against the building, unless it has been proved to the satisfaction of the jury that the plaintiffs gave credit on the sole responsibility of the contractor and agreed to look to him *alone* for the value of the materials. From the evidence it appears that in the spring of 1857 the plaintiffs engaged Rise, the contractor, to construct for them the two houses fronting on the Plank Road, Rise to find the materials. From the statement of numerous witnesses, introduced by the plaintiffs, it appears that to their proposals and arrangements about building those houses, they desired to have all the wages and materials paid for in lumber. Rise made the lowest bid, and it is contended was to be paid for his work in that way. This contract was made shortly before that with the defendant, and it was argued that in bargaining for the lumber for the defendant's house, Rise was taking it on his own account, to be paid for in his labor at plaintiffs' houses. It is also inferred that such was the arrangement, because the whole amount is posted against Rise in plaintiffs' ledger for these materials, in the same manner as in charges of articles procured avowedly for himself, and that such had long been their manner of keeping the account where they made the entries as in the present case against Rise for various persons' houses. We do not think that the method of posting the account in the ledger should have any great weight in your minds, as it is used by dealers as a mere memorandum by which they are enabled to find the charges in the daybook, and from it make out their accounts against the various buildings. The intention to

[Reinoehl & Meily *v.* Arentz.]

charge this may be fairly inferred from the form of entry, but that inference is weakened by the fact that the plaintiffs, on the same pages of their daybook, and throughout, charged Rise in the same manner for lumber procured for their own houses. We find Rise debtor "to lumber for our houses," or "to lumber for Plank Road houses," and it is not to be presumed that they intended to enter a lien against their own buildings. You are not, however, to consider this by any means a conclusive circumstance, but can treat it as one link in a chain of circumstances tending to weaken the evidence of intention on the part of plaintiffs in making the charge against the defendant's building, and must give it no more weight than you are satisfied it deserves. Sometimes entries are so made for the purpose of satisfying a party as to the correctness of the account in an after-settlement, and showing for what purpose he obtained the materials. It might be done here to show how much went into their buildings. On the other hand the entry of lumber procured for defendant's house might have been charged in the method shown by the books with the same object, to satisfy the contractor. All of these circumstances must be considered. In the absence of an agreement to trust Rise for the materials, they can look to the defendant's building. If the plaintiffs did agree to give them on the credit of Rise alone, they cannot enter a lien against the defendant's house. In connection with this branch of the case, you will also take into consideration the conversation alleged to have taken place between the plaintiffs and defendant on the 2d of November, 1857. Before proceeding to apply the evidence of Hallman and School, you will carefully consider and weigh it. You are the sole judges of the credibility of the witnesses. Mr. School's testimony in part corroborates Mr. Hallman's, but as to one material fact his memory is at fault. If you can fully rely on Hallman, who says he was asked to accompany the defendant, and take notice of what was said, it appears that on being interrogated by the defendant as to some former conversation, the plaintiffs admitted they had said his house was paid; that they had told him before, Rise had paid them; that Rise had money coming, etc. (Here the court read the evidences of Hallman and School, and also that of Bicher and Billman on the other side, and mentioned that it might be important for them to determine which conversation took place last, and also whether that referred to by the parties in presence of the defendant's witnesses was the same detailed by those of the plaintiffs, and also to the uncertainty of Billman's recollection, and then proceeded.) If from what was then said, and all the other facts of the case, you are satisfied that it was always understood that the plaintiffs trusted Rise for the materials furnished for Arentz's house, and agreed to look to him on account of what they owed, or expected to owe

for their buildings, they cannot, at an after-time, change the contract, and enter their claim as a lien.

In addition, it is also urged that by delaying to file the lien until within fourteen days of the expiration of the six months given by law, it may be fairly inferred that the entry was an afterthought, and was in conflict with the contract and original intention. We must say in reply to this argument, that the law has given the whole period of six months within which a lien may be entered, and independent of the conversation of the 2d of November, no unfavorable inference could be drawn from its not being filed sooner. You can, however, take that into consideration in connection with all the other circumstances, in judging as to whether a contract was or was not made to look to Rise, and whether entering the lien was a mere afterthought on finding more claims presented against their buildings, or their debt against Rise larger than was previously expected.

If the defendant had failed to satisfy you of an agreement that Rise alone should be held for the value of the lumber furnished, we must then proceed to consider the effect of the conversation on the 2d of November, in another aspect. If you are convinced that such was the bargain, and the lien entered against the defendant's property in violation of it, you need not examine the subject further.

If you believe the conversation took place on the 2d of November as detailed by Hallman, and that Reinoehl then said Rise had paid for the lumber for Arentz's building, or admitted he had previously said so to Arentz, and on being told that Rise said he had $500 coming from plaintiff, they said in reply, No, he has something, but not so much, the next question to be determined is, was that said in mistake? If it was, the declaration is not binding. If at the time of making these admissions the plaintiffs believed them to be true, but on subsequent examination of their books, or their claims against their own houses recently built by Rise coming in, they discovered that Rise had not paid for the lumber for defendant's house, or was largely in their debt from other causes, they can have the mistake corrected, unless in the meantime, before notice of the error, the defendant paid money to Rise, or paid out money on claims due by him for materials which he was not in law bound to pay, or has shown that he forbore to pursue Rise for the purpose of making himself secure, and also that by vigilance he would have obtained the security. A party can always have such an error corrected unless by so doing he will injure another. If injury must fall on one of two innocent persons, he whose mistake caused it must bear the loss. (The court here called the attention of the jury to the various payments made by Arentz between the 2d of November and the time of filing this lien, and then proceeded.) Several of these claims could have been

[Reinoehl & Meily v. Arentz.]

filed as liens, and therefore the defendant would have been obliged to pay them. No allowance can be made on account of such payments. Others he could have successfully contested, and if you are satisfied that defendant paid them on the faith of what was then said, they would be a good equitable defence against the plaintiffs' claims so far as they will go, but no further. If you are satisfied that the defendant could have made himself safe against Rise, if not lulled into false security by what was said by plaintiffs, and forbore to pursue him in consequence of what was then said, it will be a good equitable defence. Again, the account exhibited by the plaintiffs shows that Rise is in their debt at this time, and was when they filed the lien against the defendant's property. Was he so when the conversation took place on the 2d of November? We have not had an opportunity of examining the books, and it is your especial duty to look into them closely. The defendant's counsel contends that on the 2d of November, there was money due to Rise from the plaintiffs, after paying for all of the lumber furnished for the defendant's house.

If such is the case, good faith required the plaintiffs to withhold payment to Rise after that time, if the arrangement was made as contended by the defendant, on that day. The plaintiffs contend that they paid nothing to or for Rise after that day except what they were bound to pay by contract, or could have been obliged to pay by materialmen, who would have filed liens against their houses built by Rise. So far as they have proved contracts previously made with others, they could lawfully carry them into effect, and you must determine for what sums they were so bound, and the amount so paid, or which they were liable, could be properly carried into their account against Rise even after their conversation with the defendant. Of the sums paid by them after that time to materialmen for articles furnished for their houses, many of the bills were against Rise alone, and from aught that appears, the credit was given to him; consequently no liens could have been filed against their property, and the payments on their part were voluntary; they are in no better condition as regards those debts, so far as regards the defendant and his rights, than if they had not been paid. You must determine what amount or portion of the account stood in that situation. (The court here directed the attention of the jury to the various accounts assumed and settled after the 2d of November, by the plaintiffs, and asked the jury to consider what portion they had been *obliged* to pay, and how much, if any part thereof, had been settled because they could do it in lumber, and proceeded.) It rests on the defendant to prove to your reasonable satisfaction, either that the credit for the lumber was originally given to Rise, and not for the building, or that the plaintiffs subsequently agreed to look to him. Also, to establish the conversation of the 2d

[Reinoehl & Meily *v.* Arentz.]

of November, and his loss in consequence thereof. This, with the answers to the points, sufficiently indicate the law of the case.

1. The plaintiffs had a right to file a lien against defendant's house for the materials furnished for its construction, unless they contracted otherwise. I do not consider that there is any *legal* presumption that materials are furnished on the credit of a building. It depends on the acts of the party furnishing, the manner of charging them, the agreement between the parties, and all the circumstances of the case.

2. The manner in which the charge is made in plaintiffs' books would enable them to file a lien against defendant's property, but whether such was or was not the intention when the entry was made, may depend on all the circumstances, and their general manner of keeping their books as evidenced by this and other entries. It is a question of fact for the jury to determine.

3. This point is correct, unless the plaintiffs got the materials back.

4. In the absence of any agreement made with Arentz, as stated, on the 2d of November, the plaintiffs had a right to pay any claims for materials furnished for their buildings, although those claims could not have been entered as liens, provided they had the assent, express or implied, of Rise. If they could have been entered as liens, they had a right to pay them without the assent of Rise, and against his will. They were not bound to wait until the liens were entered, but if they had assumed the payment before the 2d of November, or if the claims could have been entered as liens against their houses, they stood in relation to those claims in the same situation as if they had paid cash to Rise to that amount before the 2d of November. The evidence shows that the payment of some of those claims had been previously assumed; others could have lawfully been entered as liens, but many were paid in their own wrong, if they made that contract of the 2d of November, as the charges for materials were against Rise alone, and never could have been entered as liens against plaintiffs' property.

5. This point has been sufficiently answered in the general charge. If money was paid to or for Rise, or paid on claims which the defendant could not have been obliged to pay, or new contracts were made for completing the building, or the defendant was lulled into false security as to Rise, and thereby induced to abstain from taking measures to secure his claims, and was consequently *injured*, the plaintiffs cannot correct their mistake to the defendant's prejudice. If no loss occurred thereby to the defendant the mistaken declaration will not bind them.

6. This point is sufficiently answered in the general charge. If the plaintiffs stated on the 2d of November that they had noth-

[Reinoehl & Meily *v.* Arentz.]

ing against defendant's house, and that there was money due by them to Rise, they are at liberty to show that the declarations were made under a mistake, and can prove that Rise was in their debt; but they cannot correct that mistake provided that Arentz would be injured by such correction—that is, if in consequence of what was then said, he paid out money which he otherwise would not have paid, or made contracts and incurred expenses which he otherwise would not have done; after deducting those payments and allowing for those losses the mistake can still be corrected, as already explained. Whether the plaintiffs have shown that there was a mistake in regard to their account with Rise, will depend on the view you take of the accounts between those parties. It is a question of fact, and it is not for the court to say that the plaintiffs have "*fully shown*" the mistake.

7. There is no such thing as a set off in cases of this kind. The matters referred to can only be allowed by way of legal or equitable defence, depending on what was done, if anything, in consequence of the conversation of the 2d of November; and this part of the defence turns wholly on what was then said and done, and on whether the defendant paid money, sustained losses, or incurred expense, in consequence thereof, and also as to whether the plaintiffs did or did not give him early warning of the mistake before the loss was incurred. That is all sufficiently explained in the general charge.

To the foregoing charge and the answer to the points the plaintiffs by their counsel did except, and at their request this exception sealed.

AFFIRMED BY THE SUPREME COURT. Not reported.

*Kline and Funck, for plaintiff.*

*Kunkel and Killinger, for defendant.*